Our next case is Newimar v. U.S. and J&J Maintenance, 2022-1949. We'll be ready when you are, Mr. Schor. Yes, Your Honor. Thank you for your patience. Good morning, Your Honor. May it please the Court, I'm Lawrence Schor, and I'm here on behalf of Newimar S.A., in connection with this matter. This is a bid protest stemming from a 2019 RFP, which has been hotly contested for many years, with more than one protest in the Court of Federal Claims. And the second decision, issued May 2022, is the one which is at issue now. And there are three grounds of protest, one arising out of the decision of the lower court. The issue, which we believe is primary, is the one of contractor responsibility. Did J&J Maintenance have to be registered in the Spanish Registro Mercantil, have an office in Spain, be given a tax number with a W, or not? Because without that, they were not capable of performing the contract in Spain as a matter of Spanish law. Why weren't those issues raised by not having been raised until the reply brief? Oh, Your Honor, we disagree with that, Your Honor, if I may. The Registro Mercantil and the tax number issues were raised in the Newimar opening MGR at Appendix 121 and 122. We said, for example, J&J was nonresponsible because of its failure to be properly registered. We said, as Newimar had previously argued J&J was and is required to be registered to conduct business in Spain, we said, here, both the Navy and J&J knew, or should have known from Newimar's first bid protest, that J&J was unregistered in Spain. Now, Your Honor, both the Department of Justice and J&J has the opportunity to respond and did respond in their MGRs, which were the opposition to our MGR, and also putting forth their own case. So the DOJ, in support of the cross-motion for judgment that they filed at Appendix 308, stated clearly that Newimar contends that the awardee was not a responsible bidder because J&J was ineligible for award, and contending that they were not in compliance. J&J's report stated at Appendix 343 of their MGR submission, Newimar claims that J&J was not eligible for award and should have been found not responsible because, allegedly, Spanish law requires a foreign entity with a permanent establishment in Spain to register in the Registro Mercantil and was not registered in the Registro Mercantil at the time. Why aren't these post-award issues? They are not post-award issues, Your Honor, because the Spanish law, among other things, requires that in order for any foreign company to be able to perform a contract in Spain, they must be registered in the Registro Mercantil. They must have a proper W tax number in order to do that. Now, that law is totally independent of any type of treaty that was involved here. This is an independent law, and these people were fully knowledgeable that they had to do this. Why? Because capability required by FAR 9.104-3 said, be otherwise qualified and eligible to receive an award under applicable laws and regulations where the contract is to be performed. Now, in order to do this, there's a significant requirement, just like the Service Contract Act in the United States, when one service contractor takes over another, they're supposed to hire the people, which means they have to deal with the Spanish tax laws. They have to deal with the Spanish equivalent of Social Security. They have to deal with a bunch of other benefits. And in order to do that, you must be registered in the Registro Mercantil, and you must have the proper tax number. And in this case, J&J did not have it. So therefore, FAR regulation you just quoted from, it said to be eligible, you have to be qualified to receive the award under all applicable laws and regulations. It doesn't say you have to be ready to go to perform the award. That's correct. So I guess maybe in that way, what the resolicitation makes clear, which is that you don't have to have all of these licenses or registrations or whatever at the time of the award, just at the time of performance, is entirely consistent with what the regulation is calling for and contemplating, which is merely that you just have what you need to be qualified for at the time of the award is different than what you need at the time of performance of the award. And we disagree with that, Your Honor, completely. That's the argument of the other side. It's our position that you must have the capability to perform all of the elements of the scope of work at the time you will receive the award of the contract, and you must have that capability at the time in order to be able to be found responsible. And in this particular case, in particular here, we believe that the lower court erred in finding that this was deferred. Instead, our position is that what the lower court did in making a mistake is that they looked at the movement of certain specific activities, such as pest control and other licenses that a contractor must have as a matter of performance once they get the award, did not have to have those particular licenses. This is not pest control. This is the capability to deal with a different Spanish law which mandates that the employees must be hired and must deal with all of the functions with the employees that they argue. I hear what you're saying, but I'm not seeing that at page 121 and A122. The specific argument that you're making right now about the type of licensing required, where specifically did you have him look on pages A121 and 122 to find that? It seems to be more general. It says licensing, and then it says N number, tax number, and then it says registered for pest control. That's what I'm seeing. Well, what we have explained within our brief is the difference between capability at the time of award versus having a license to do certain specific activities. One of the issues in the very first. You said, where did you preserve that, or where did you make that argument? This is going back to the waiver issue. Yeah. Well, Your Honor, to the best of my knowledge, if I have the wrong page, I really think that it is in there. The lower court mentioned pest control at appendix 45, in her opinion, and we responded to that, that the registration itself was not delayed. Yeah, this definitely mentions pest control. The only thing I see here is the tax number and the pest control. And here's a more general statement about properly registered to conduct business. Well, you must be registered, and you must have the proper tax number to conduct business in Spain. Is 122 where you're relying on in pages 121 and 122, or do you have nothing additional to add on that? Your Honor, I would have to take what are valuable minutes. I will try to do that, OK? Maybe you can do that during the rebuttal. OK, thank you very much, Your Honor. I'll proceed then. Now, we have argued, in connection with this particular requirement, that the lower court ignored written evidence that the Navy knew that registration was mandated as part of responsibility for purposes of the award. And we did this looking at Appendix 114809, 114835, where at 114809, the May 14th of 2020, email from the Navy to J&J and all of the proposed bidders said, per FAR Part 9, we are reaching out to all offerors on the subject solicitation to inquire if they have a Spanish tax ID number, commonly referred to as a CIF. At Appendix 114833, June 24, 2020, the Navy to J&J says, as part of ongoing responsibility determination related to the solicitation for BOS services at Naval Base registered with the Spanish Registro Mercantile and approved to conduct business. We've looked at the opinion of the court at Appendix 34, which she ties this in somehow to the treaty. And she's absolutely wrong, because the treaty of the ADC for operation has nothing to do with it. We say that the lower court ignored the explicit statement from DOJ counsel at oral argument before her that said the contracting officer assumed that some issue with the permanent committee was a responsibility issue. But then she went on to argue that it was not required in advance of award, and it simply reflects an evolving understanding. Now, the lower court also ignored contradictory evidence on other parts of the record to conclude that the Navy adequately investigated responsibility. She did this at Appendix 25. She goes through a whole bunch of other reasons and concludes that there is adequate rationale to support the award without further discussion. And she's absolutely wrong. The FAR requires an affirmative at 103, an affirmative finding by the contracting officer of responsibility. And it says that without that finding, you cannot make the award. And so looking at Appendix 11, 113.236 to 113.429, the Navy's responsibility determination memorandum completely ignored the tax and registration issues and contains no reason whatsoever for dispensing with that relationship. The Navy's business clearance memorandum at Appendix 113430 to 113440, it's totally silent on the registration. The lower court also found that J&J did not pay attention to the fact that J&J told the Navy that it was not registered and did not have to be. At Appendix 114813 to 114814, Mr. Kelly of J&J emailed, J&J is not registered with the Spanish Registro Mercantile. And the same Mr. Kelly at Appendix 114812, July 15, 2020, explaining why registration is not necessary. And they absolutely did not do it. Now what happened in this particular matter, and it is a matter which is outstanding before the court right now, is on December 22nd of last year, we submitted a motion asking the court to take judicial notice of a letter which was sent from J&J Secursa en España, which means J&J Spain, a different company founded by J&J. Mr. Shaw, we have your motion, and we will want to hear what the other side has to say about it. You're well into your rebuttal time, so we can save that for you. OK, thank you, Your Honor. And we'll give you two minutes for rebuttal. Thank you, Your Honor. Ms. Konek. Good morning, Your Honors. And may it please the court. As an initial matter, the trial court did not abuse its discretion in finding the J&J's, or in rejecting J&J's responsibility challenges, sorry, rejecting numerous responsibility challenges, both on waiver grounds and on the merits. To address Your Honor's point as to what exact issues were raised, in the heading, Neumar argues that J&J was required to be registered to do business in Spain, but it's clear from the argument that follows that heading that the argument focuses on the N tax number and on the pest control licenses, and does not argue either that J&J needed a W tax number or the registration within the register of mercantile. So it's the registration in the Spanish register of mercantile, also the W tax number, and then also the agreement on defense cooperation, right? Correct. Those were the issues that the trial court found waived, and which were not specifically argued in the initial MJAR. There is a general responsibility argument, but it's focused on the N tax number and on the pest control licenses. And so the trial court was correct to find those waived. So in your view, what standard would we view that under? That would be reviewed by this court under an abuse of discretion standard, because matters of waiver are within the discretion of the trial court. And so the abuse of discretion would be the appropriate standard. So when this brief argues that J&J wasn't registered to conduct business in Spain, are you saying that that could be referring to some other kind of registration other than being registered with registral mercantile? Yes, Your Honor. It's too vague, because we don't know if it's referring to registral mercantile? Well, no, Your Honor. I'm not arguing that it's too vague. I'm saying that when you look to the actual argument that follows the heading, the argument is that J&J has no tax number to conduct business in Spain. So that being registered to conduct business in Spain is specifically referring to not having an N tax number. It's only once the government submitted its motion for judgment on the administrative record and demonstrated that Neumar was wrong factually about whether J&J had an N tax number that it pivoted to the argument that it needed now a W tax number and changed the argument in its reply brief. What about the motion for judicial notice that these have already been taken care of? And if they really didn't need to be done earlier, if it was sufficient that they be done before performance, why hasn't the requirements been satisfied? Well, Your Honor, as we argued in the response to the motion for judicial notice, those documents are not appropriately part of the appellate record in this case. But they do demonstrate that the requirements could be satisfied post-award and were, in fact, satisfied prior to actual conducting of business in Spain. And that's consistent with the RFP, with the solicitation in this case that required permits, licenses, and authorizations to perform work post-award. And these types of post-award requirements are simply not matters of responsibility. They're instead matters of contract administration. Moreover, this court's decision in Allied Tech allows for a contracting officer to rely on the certifications that are provided in a proposal about these types of things. So J&J certified in its proposal that it had or could obtain the licenses that were necessary to perform work. And the contracting officer was reasonable in relying on that certification. The responsibility memorandum that is in the administrative record addresses the appropriate matters of responsibility, which include financial capability and those types of other appropriate responsibility matters. And the provision at 9.104-1G, which is the catch-all provision in the list of responsibility matters, should be read in the context of the rest of that provision, which all deal with the capacity of the company as a whole, independent of any particular procurement, to be a responsible contractor and to perform the contract. But requirements which are specific to their contract, such as licenses, permits, authorizations to perform work, these are the types of things that are rather than the case. Could you comment a little bit on the treaty? And I got a little confused in the briefing on to what extent the treaty is in play or what the state of the argument is that's a version of that treaty argument, but it's not really relying on the treaty anymore. It's relying on Spanish law. Your Honor, if I understand the appellant's argument, at the trial court level, Neumar had been arguing that the ADC, the Agreement on Defense Cooperation, had been violated, specifically Article II, Section 4. The argument that Neumar presents on appeal is not arguing that this treaty has been violated. And so I don't think that it raises the jurisdictional concerns that the trial court had found, because again, the arguments changed a little bit on appeal. And we don't think it's necessary for this court to interpret any international treaty in deciding the responsibility. I think the one element of Neumar's argument that it had raised at the trial court level that would be problematic would be an argument that the contracting officer should have deferred to the Spanish section of the permanent committee when it had mentioned that J&J was not registered in the Registro Mercantil. And so to the extent that argument is not presented to this court in that way, we don't think that there is a concern about the jurisdiction over international treaties, because it's not necessary for resolution of the responsibility issues. Do you think the appellant's unbalancing argument fails for lack of showing of prejudice? Your Honor, the unbalancing argument, it fails to show prejudice in the sense that Neumar's argument fails to demonstrate the materiality of any unbalancing, and it fails to show any effect or any risk to the government of any unbalancing. Simply an argument that prices are higher or lower, either than the government cost estimates or than Neumar's own prices, is not sufficient to show or to demonstrate material unbalancing. There would have to be something more. A protester would have to show that the unbalancing would have an effect or have a risk that the government would pay too much money. In this case, the- It seems like the other side incorporated by reference briefing from below to establish that, in fact, the other side's ELINs were unbalanced. And beyond that, it was rises to the level of being material. All of that was not actually briefed in their blue brief. They were referring to pages from another brief elsewhere. Yes, correct, Your Honor. The Neumar's arguments on appeal failed to demonstrate unbalancing. They failed to demonstrate the materiality of any unbalancing, and they failed to demonstrate any risk to the government of any unbalancing. So this court can dispose of those issues for failure. What's the right way to think of price reasonableness? Is it only when there's a suspicion that the price of the bid is too high and not at all, ever, whether it's a question of whether it's it might put the government at risk of a failure to perform? Your Honor, the price reasonableness analysis exclusively looks to whether a price is too high, and it does not, should not- Where do we get that law from? Well, I think several cases, Your Honor, that we've cited in the brief- This court's cases? I think DynCorp was a decision of this court, if I'm remembering correctly, and perhaps the Court of Federal Claims' decision in Agile Defense. But this solicitation did not include a price realism requirement, which would look to whether a price is too low. And in the context of a firm fixed price contract such as this one, there isn't really a risk of a price being unreasonably low, Your Honor, which is why the agency reasonably chose to only conduct a price reasonableness analysis and not a price realism analysis. And we believe that NUMR is simply incorrect to argue that under a price reasonableness analysis, the agency should be looking to whether a price is too low. Thank you. Unless Your Honors have further questions, we would ask the court to affirm the decision of the trial court in this case. Thank you, counsel. Mr. Shaw has a couple of minutes to bottle. Thank you, Your Honor. Thank you, Your Honor. In connection with the appendix pages, Your Honor, I'm looking at appendix 121 and 122 with the heading of Roman numeral II. The Navy improperly evaluated J&J's responsibility and fitness to perform the contract because J&J lacked the appropriate licensure to perform the required duties and was not registered to conduct business in Spain when it submitted the original proposal and when it was awarded the contract. And we go in to continue the discussion through the top of page 123. I don't see in there where the Spanish mercantile register was mentioned or the agreement on defense cooperation or the W tax number. Am I missing something? It's not mentioned expressly. I understand it was your argument that the broad language should be read to encompass those things. Well, that is right, Your Honor, because we get into. I just want to make sure you have an opportunity to tell me where those things are more specifically mentioned if they are. And if they're not, and you said your argument is that they fall under the broad heading, that's fine. I just want to give you the opportunity to identify it. I understand that, Your Honor, and I believe that the thrust of our position was set forth in our opening amjor and in the arguments as well before the lower court in which we specifically went right after the registration requirement. Sounds like there's nothing more specific. I understand that. And your red light is on. Do you want to finish your argument? Yes, I would just like to also add, with regard to the question on unbalancing and materiality, specifically in this particular case, there was materiality because the Navy specifically made a point of, one, insisting that every single one of these islands be filled out or the bid would be non-responsive. And secondly, they stated that they would evaluate that as part of their evaluation of the propriety. Do you know that there's a rule that you're not allowed to incorporate, by reference, briefing from other briefs into your appellate briefs? I mean, I see that your blue brief was 13,978 words, which is right up against the 14,000-word limit, and then you incorporated, by reference, multiple pages from other briefing into this brief, thereby blowing through the 14,000-word limit if we were to accept those other pages as truly being incorporated by reference. We have our argument on page 44 and 45 that goes right to this point about the fact that the statements, I understand what you're saying, Your Honor. I appreciate that. But we do believe it was material, and that because the Navy made it material, we do believe that all of the arguments about the treaty and the ADC are not applicable, simply because the lower court found that the ADC was the only way that we had a claim. And she ignored the fact that our protest was based on the failure to meet the independent. How long has NUMAR been on the bridge contract now? The NUMAR is no longer on the bridge contract. They were given, so at the beginning of 2023, the contract was given for performance to J&J. And so we were on it for, I guess, the remainder of 2021 and 2022. That was the decision made by the Navy, the way they would handle it. Thank you, counsel. I think we have arguments on both sides. The case is submitted. Thank you, Your Honor.